The VALUE HOUSE, a corporation,
Plaintiff-Appellant,

v.

PHILLIPS MERCANTILE COMPANY,
d/b/a Value House,
Defendant-Appellee.

No. 74–1275.

United States Court of Appeals,
Tenth Circuit.

Argued Oct. 24, 1974.

Decided Sept. 19, 1975.

Michael L. Danoff, Albuquerque, N. M. (Ahern, Montgomery & Danoff, Albuquerque, N. M., on the brief), for plaintiff-appellant.

Norman S. Thayer, Albuquerque, N. M. (Sutin, Thayer & Browne, Albuquerque, N. M., on the brief), for defendant-appellee.

Before SETH, HOLLOWAY and DOYLE, Circuit Judge.

HOLLOWAY, Circuit Judge.

This is an action for service mark infringement under the Lanham Trade Mark Act,[1] and for common law trade name infringement and unfair competition.[2] Plaintiff, The Value House, ap-

---

1. The Lanham Act defines a "service mark" as "a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others." 15 U.S.C.A. § 1127.

2. This court has defined a "trade name," and distinguished it from a "trademark." "Gener-

ally speaking, a trade-mark is applicable to the vendible commodity to which it is affixed, and a trade name to a business and its good-will." *Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 71 n.9 (10th Cir.). See also Restatement of Torts § 716 & comment *a* (1938). We have noted that "the precise difference [between trademarks and trade names] is immaterial as

peals from a judgment holding, *inter alia*, that defendant, Phillips Mercantile Company d/b/a Value House, is not guilty of any trade name infringement or unfair competition and enjoining plaintiff from conducting or soliciting for retail general merchandise business under the name "Value House" and the representation of a house within the State of New Mexico and Montezuma and La Plata counties in Colorado.

Plaintiff's suit was brought for alleged service mark infringement under the Lanham Act and common law trade name infringement and unfair competition. Plaintiff's claim was that, by virtue of its filing and the registration under the Lanham Act, it had the right to the exclusive use of the name "Value House" and the representation of a house in the general merchandise store field throughout all 50 states, including New Mexico and Southwest Colorado (See App. 8, 36, 38). Defendant counterclaimed, seeking an injunction restraining plaintiff from using the words "Value House" as a part of any trademark or trade name in connection with plaintiff's general merchandise business within the State of New Mexico, the western portion of the State of Texas and the southern portion of Colorado, the trade area wherein it claimed the name "Value House" had become associated with its business. (App. 18).

Pursuant to findings discussed below, the trial court dismissed plaintiff's complaint and granted defendant's counterclaim to the extent of enjoining plaintiff from opening or operating a retail soliciting business under said name and representation of a house, or from advertising or otherwise soliciting business under said name and representation within the State of New Mexico and Montezuma and La Plata counties in Colorado, other than catalogue mailing and sales at the

solicitation of a customer for a catalogue or a purchase. The court concluded that defendant's use of the name "Value House" and the representation of a house did not infringe on plaintiff's registered trade name, and that neither party was guilty of common law trade name infringement or unfair competition. The court concluded that defendant had the exclusive right to the use of the name "Value House" and the representation of a house in the conduct of a retail general merchandise business within the State of New Mexico and Montezuma and La Plata counties in Colorado, and that the name and representation had acquired a secondary meaning in that area in that it was associated in the public mind with defendant's business.

On appeal plaintiff advances five principal contentions: (1) that the trial court erred in concluding that defendant's use of the trade name "Value House" and the representation of a house was not an infringement on appellant's trade name, and not unfair competition; (2) that the court erred in ruling that plaintiff had no common law trade name right to utilize the trade name "Value House" and the representation of a house; (3) that even if plaintiff had no presently enforceable remedy against defendant, the judgment of the trial court should be modified to make clear the rights of the plaintiff at such time as the plaintiff does begin to conduct substantial business in New Mexico and Southwestern Colorado; (4) that the court erred in ruling that plaintiff's claim for damages incurred prior to November 28, 1968, was barred by limitations, N.M.S.A. § 23–1–4; and (5) that the court erred in granting defendant's counterclaim since defendant did not make a prima facie case or state a valid counterclaim.

We cannot agree with the plaintiff's contentions, and affirm. We sustain the

---

the law protects against the appropriation of either upon the same fundamental principles." *Standard Oil Co. v. Standard Oil Co.,* supra at 71.

In this opinion we shall use the term "trade name" with reference to both the name and

the mark which form the basis for the dispute, both in regard to the common law and the Lanham Act.

trial court's findings and conclusions, which outline the factual background.

## I

The trial court's findings, which we sustain, are as follows.

Plaintiff is a Maine corporation that began using the name "The Value House" and a representation of a peaked roof house in Maine in 1961 in connection with a general merchandise business. On May 24, 1968, plaintiff applied for federal registration of the name "The Value House" and a representation of a house. On October 7, 1969, registration was granted for the name and representation by the United States Patent Office. Plaintiff has since used the name and representation continuously for the conduct of a general merchandise business.

The court found further that defendant is a New Mexico corporation which has engaged in the wholesale merchandising business since 1937 and which adopted the name "Value House" and the representation of a peaked roof house for use in connection with a retail general merchandise business on or about May 1, 1968. Defendant registered the name "Value House" and the representation of a house as the trade name of its general merchandise business with the Secretary of State of New Mexico under the New Mexico Trade-Mark Act, 1953 N.M.S.A., § 49–4–6 *et seq.*, and was issued a trademark under that Act on August 5, 1968. Retail sales began to the general public under the name "Value House" and the representation of a house on August 6, 1968, and the business has continued under the name and representation to date.

It was found that at the time defendant adopted the name "Value House" and commenced business under it, plaintiff had no business location outside the State of Maine. Plaintiff opened its first business location outside of Maine in 1969, and now has business locations in Maine, New Hampshire, Massachusetts, New York, New Jersey, Vermont and Connecticut. Plaintiff had no plans to expand its business area until after the time it was taken over in 1971 by a larger and more diversified corporation.

The court found that at the time that defendant adopted the name "Value House" and the representation of a house, and at the time it commenced its general merchandise business under the name, defendant had no specific knowledge of the existence of plaintiff's business or the use by plaintiff of the name "The Value House." (See App. 279–80, 297, 312–13).[3] Defendant did not learn of the plaintiff's use of the name "Value House" until 1971. Defendant, it was found, prior to adopting the name "Value House," did have actual knowledge that another general merchandise business was then in operation under the name "Value House" in Indiana. In adopting the name "Value House" and the representation of a house, defendant relied on the fact that the business in Indiana used the name without apparent claim by anyone to the exclusive ownership of the name.

Defendant presently operates two retail outlets in Albuquerque, New Mexico. It was found that defendant has spent large sums of money in advertising the name "Value House" and the representation of a house throughout New Mexico and in Montezuma and La Plata counties in Colorado. Defendant has a catalogue mailing list of more than 40,000 customers, with 99% of them residing in New Mexico and Southwest Colorado. Defendant's sales volume under the name "Value House" now exceeds $3,000,000 per year, 99% of which consists of sales at its retail outlets in Albuquerque, with the balance being mail order sales to its catalogue subscribers.

The court found that defendant does not advertise or transact any business outside New Mexico and Southwest Colorado with the exception of the mailing

---

**3.** The defendant did, however, know that others on the east coast, as well as the Indiana concern, were using the name "Value House." (See App. 316).

of a small number of catalogues to some 20 states. Defendant mails its cata-logues only to persons who call at or write to one of its retail stores in Albuquerque to request a catalogue. Except for the mailing of catalogues and the filling of mail orders, defendant does not intend to expand its business beyond New Mexico and Montezuma and La Plata counties in Colorado and does not claim the right to do so.

It was further found that during 1968 plaintiff did not advertise in New Mexico, made no sales in New Mexico and transacted no business there. At the present time plaintiff mails about 20 catalogues annually into New Mexico out of a total mailing of 750,000 catalogues. It does not otherwise advertise in New Mexico in any way. The only business that plaintiff presently transacts in New Mexico is in filling a few mail orders. There were about five or six such orders during the Christmas season of 1972. Plaintiff has recently conducted an advertising campaign by a mass mailing of 2,000,000 circulars, some of which were mailed into New Mexico and Southwest Colorado. However, plaintiff has no present plans to expand its business by opening an actual location within New Mexico or Southwest Colorado, and has no plans to do so within the reasonably foreseeable future.

Defendant's use of the name "Value House" and a representation of a house in connection with a retail general merchandise business in New Mexico and Southwest Colorado, and in connection with catalogue sales, has been continuous from a date prior to plaintiff's registration and prior to the date of publication of plaintiff's registration of the name and representation, according to the findings.

It was found that defendant did not select the name "Value House" and the representation of a house for the purpose of benefiting from plaintiff's reputation and good will, and defendant has not so benefited. Defendant has not passed off any of its goods as being those of the plaintiff. In 1968 plaintiff's business was unknown to the public in New Mexico and Southwest Colorado, and is unknown there at this time. The name "Value House" is associated in the mind of the public with defendant's business. There is no actual competition for retail sales between plaintiff and defendant. And there has been no actual confusion between the plaintiff and defendant in the mind of any customers, it appearing that there are no customers common to them.

There is no substantial challenge to the findings of subsidiary facts, and we sustain them. From the findings we turn to plaintiff's appellate contentions. It is convenient to discuss them in connection first with the Lanham Act, and then common law principles.

II

Plaintiff's arguments are primarily focused on the Lanham Act, although common law principles are cited also. The contentions essentially are that plaintiff was first to apply for registration of the "Value House" trademark; that at that time defendant had not yet adopted the name; and that plaintiff obtained an exclusive, nationwide right to use of the trademark and name, superior to any rights of defendant, even within New Mexico and Southwestern Colorado (Opening Brief of Plaintiff-Appellee, 18). Reliance is placed, *inter alia*, on *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2d Cir.); *In re Beatrice Foods Co.*, 429 F.2d 466 (C.C.P.A.); and *Sterling Brewing Corp. v. Cold Springs Brewing Corp.*, 100 F.Supp. 412 (D.Mass).

At the outset we will consider contentions related to the facts. Plaintiff says that defendant "had knowledge or constructive notice of prior usage of the trade name as early as 1968 . . ." (Opening Brief of Plaintiff-Appellant, 23). Reference is made to the testimony in which defendant's manager admitted being told in January, 1968, that "there were others using [the tradename] on the East Coast . . ." (App. 315–16). And it is argued that since the same name and almost the exact repre-

sentation of a house were used, the argument of lack of knowledge should be rejected. See *Tisch Hotel, Inc. v. American Inn, Inc.*, 350 F.2d 609, 613 (7th Cir.).

■ We cannot agree. The trial court made specific findings that defendant adopted the name and representation about May 1, 1968; that at the time defendant adopted the name, and when it registered the name, in New Mexico (its trademark was issued August 5, 1968),[4] defendant had no specific knowledge of plaintiff's business or its use of the name and did not learn of plaintiff's use of it until 1971 (App. 33–34). There is ample support for the findings (See App. 242; 282–83; 297; 306; 312–14). Moreover, constructive notice is governed by the statute and is effective from registration, 15 U.S.C.A. § 1072, and here plaintiff's registration was not obtained until October 7, 1969 (App. 33), well after defendant adopted the name and commenced use of it.

Thus we decide the case within the framework of the findings made by the trial court.

■ Plaintiffs assertion of its exclusive, nationwide right is primarily based on the Lanham Act. The statute does go beyond protection under common law principles which afford rights growing out of use, not mere adoption. *United Drug Co. v. Rectanus Co.*, 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141. And the Act in 15 U.S.C.A. § 1072, provides that registration is constructive notice of the registrant's claim of ownership and affords protection which is nationwide and not confined to areas of actual use of the mark. *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 362 (2d Cir.). Registration also brings the right to rely on the evidentiary presumptions of 15 U.S.C.A. § 1115, *In re Beatrice Foods Co.*, 429 F.2d 466, 472 (C.C.P.A.), which include the registrant's exclusive right to use. Beyond affording nationwide protection, the constructive notice provision of § 1072 has eliminated the defense of a

subsequent user that he had adopted the mark in his area in good faith and with lack of knowledge. See *Dawn Donut Co. v. Hart's Food Stores, Inc.*, supra, 267 F.2d at 362; *Sterling Brewing v. Cold Springs Brewing Corp.*, 100 F.Supp. 412, 418 (D.Mass.).

■ Nevertheless, the portion of the statute affording remedies such as are sought here has limitations. 15 U.S.C.A. § 1114(1) provides for liability in a civil action of any person using a registered mark in commerce where such use is likely to cause confusion, or to cause mistake, or to deceive. Here the trial court found there has been no actual confusion between the parties in the mind of any customers, it appearing there are no customers common to them and that there is no actual competition between them for retail sales (App. 36). In such circumstances relief under the Act should be denied. *Dawn Donut Co. v. Hart's Food Stores, Inc.*, supra, 267 F.2d at 365.

■ Furthermore, a defense to the infringement claim was available based on defendant's adoption of the mark without knowledge of use of the mark from a date prior to registration of plaintiff's mark under the Act. Plaintiff's mark had not become incontestable under 15 U.S.C.A. § 1065[5] and in such event 15 U.S.C.A. § 1115(a) provides that registration shall not preclude any legal or equitable defense or defect that might have been asserted if the mark had not been registered. The prior use defense in these circumstances is made available by 15 U.S.C.A. § 1115(b)(5) even against a plaintiff whose mark has become incontestable and so the defense is *a fortiori* available here. *Avon Shoe Co. v. David Crystal, Inc.*, 171 F.Supp. 293, 299 (S.D. N.Y.), aff'd, 279 F.2d 607, cert. denied, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224; and see *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 103–04 (7th Cir.); Treece, Security for Federally Registered Mark Owners Against Subse-

---

4. Defendant's President testified the filing in New Mexico was on August 1, 1968.

5. As stated earlier, plaintiff's mark was registered on October 7, 1969.

quent Users, 39 Geo.Wash.L.Rev. 1008, 1025.

This brings us to a primary argument on application of the Lanham Act seriously pressed by plaintiff. The contention is that since defendant would not have a concurrent right to use the mark for lack of use prior to *first filing* of plaintiff's application for registration under 15 U.S.C.A. § 1052(d) (dealing with concurrent registration), he should likewise be denied such a defense under 15 U.S.C.A. § 1115(a). Plaintiff points to the delay between applications being filed and registration and the anomaly of the result if a prior use defense is recognized under § 1115(a) when concurrent use rights could not be obtained because of prior filing by another user.

■ The difficulty for plaintiff is that the statute is quite clear in making the availability of the defense turn on use prior to registration or publication of the registered mark,[6] not filing of the application. 15 U.S.C.A. § 1115(b)(5) affords a defense if the mark was adopted without knowledge of the registrant's prior use and has been continuously used from a date "prior to registration . . . or publication of the registered mark . . . .", the defense being provided only for the area in which such continuous prior use is proved. *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.,* 433 F.2d 99, 103–04 (7th Cir.); *Mister Donut of America, Inc. v. Mister Donut, Inc.,* 418 F.2d 838, 842–43 (9th Cir.). Regardless of any appeal of the policy arguments advanced, we can go no further than the plain terms of the statute. See *Waddell v. Fleming,* 510 F.2d 4, 7 (10th Cir.), cert. denied, 422 U.S. 1007, 95 S.Ct. 2629, 45 L.Ed.2d 670.

For these reasons we must hold that plaintiff's Lanham Act claim lacks merit.

### III

The issues to be considered include the common law rights of the plaintiff, as well as its claim under the Lanham Act. (See Pretrial Order, App. 22). Hence we turn to these principles.[7]

■■ Under common law, the trademark rules are part of the law of unfair competition and the right to a trademark grows out of use and not out of the adoption of a trademark. See *Olin Mathieson Chemical Corp. v. Western States Cutlery & Mfg. Co.,* 227 F.2d 728, 730 (10th Cir.). "There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed." *United Drug Co. v. Rectanus Co.,* 248 U.S. 90, 97, 39 S.Ct. 48, 50, 63 L.Ed. 141. The initial user may obtain protection under these principles on the basis of a likelihood of confusion. See *Avrick v. Rockmont Envelope Co.,* 155 F.2d 568, 572 (10th Cir.).

■ The general common rule is that, as between conflicting claimants to the right to use the same mark, priority of appropriation determines the question. See *United Drug Co. v. Rectanus Co.,* supra, 248 U.S. at 100, 39 S.Ct. 48. The reason for the rule is that purchasers have come to understand the mark as indicating the origin of the wares, so that its use by a second producer amounts to an attempt to sell his goods as those of his competitor. Ibid. The Court has defined limitations on the protection afforded in *Hanover Milling Co. v. Metcalf,* 240 U.S. 403, 415, 36 S.Ct. 357, 361, 60 L.Ed. 713:

> In the ordinary case of parties competing under the same mark in the same market, it is correct to say that prior appropriation settles the question. But where two parties independently

---

6. The reference to publication of registered marks relates to publication of unexpired marks registered under the earlier 1881 and 1905 statutes, and has no application here. See 15 U.S.C.A. §§ 1062(c) and 1115(b)(5).

7. The authorities reviewed include decisions by the Supreme Court and lower federal courts. No state law decisions or statutes pointing to different views are cited and we find no New Mexico authorities indicating contrary views.

are employing the same mark upon goods of the same class, but in separate markets wholly remote the one from the other, the question of prior appropriation is legally insignificant, unless at least it appear that the second adopter has selected the mark with some design inimical to the interests of the first user, such as to take the benefit of the reputation of his goods, to forestall the extension of his trade, or the like.

Accord, *United Drug Co. v. Rectanus Co.,* supra; see also *Blue Bell Co. v. Frontier Refining Co.,* 213 F.2d 354, 361 (10th Cir.); *Sweet Sixteen Co. v. Sweet "16" Shop, Inc.,* 15 F.2d 920, 922 (8th Cir.).

■ Protection under common law principles has, nevertheless, been extended beyond the prior user's actual goodwill zone to the area of his natural or probable expansion. See e. g., *Sweet Sixteen Co. v. Sweet "16" Shop, Inc.,* 15 F.2d 920, 924 (8th Cir.); *Food Fair Stores, Inc. v. Lakeland Grocery Corp.,* 301 F.2d 156, 161–63 (4th Cir.).

■ With these principles in mind, we focus again on the facts found by the trial court. Plaintiff began using the name "Value House" and the representation of a house in Maine in 1961 in connection with a general merchandise business. In 1968 when defendant first adopted and used the name "Value House" in New Mexico, plaintiff had no business location outside of Maine. Plaintiff opened its first location outside Maine in 1969 and, even at trial, its locations were confined to the northeast.

Moreover, the court found that plaintiff had no plans to expand its business area until after the time it was taken over in 1971 by a larger and more diversified corporation. During 1968 plaintiff did not advertise in New Mexico, made no sales in New Mexico, and transacted no business in New Mexico. Further, at the time defendant adopted the name "Value House" and the representation of a house, and commenced business under it, defendant had no specific knowledge

of the existence of plaintiff's business or the use by plaintiff of the name "The Value House." And it was found that defendant did not select the name and representation of a house for the purpose of benefiting from plaintiff's reputation and goodwill, and that defendant had not so benefited (App. 36).

In these circumstances we agree with the trial court's denial of relief sought on common law principles. Despite plaintiff's prior appropriation, the defendant's good faith adoption and use of the name and representation in New Mexico and Southwestern Colorado, and the other circumstances cited, preclude relief. See *Hanover Milling Co. v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; *United Drug Co. v. Rectanus Co.,* 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141.

## IV ·

We will deal briefly with remaining arguments of plaintiff.

■ Plaintiff contends that even if no presently enforceable right to relief has been established, the trial court erred in failing to grant relief for the future and that at least the court should have made clear plaintiff's right to such relief. Reliance is placed on *Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358 (2d Cir.); *Holiday Inns of America, Inc. v. B. & B. Corp.,* 409 F.2d 614 (3rd Cir.); and *John R. Thompson Co. v. Holloway,* 366 F.2d 108 (5th Cir).

It is true that the court in *Dawn Donut* did recognize the right of plaintiff to such future relief on a proper application and showing of likely confusion, should the plaintiff expand its retail activities into the disputed market area where defendant operated. However, the reasoning in *Dawn Donut* was expressly based on the constructive notice provision of the statute and the fact that registration of plaintiff's mark, bringing constructive notice, came before defendant's use of the mark. See 267 F.2d at 360–62. The other cases relied on involved similar circumstances. We feel the result should be the contrary where the defendant's good faith use of the mark preceded the

plaintiff's registration. See *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.,* 433 F.2d 99, 103–04 (7th Cir.).

We do note, however, that although the point of defendant's superior right to use the mark in the New Mexico and Southwestern Colorado area is decided in defendant's favor on present facts, including continuous use from a date prior to plaintiff's registration of the mark, see 15 U.S.C.A. § 1115(b)(5), abandonment of use by defendant or other changed circumstances might present a different future case. If so, plaintiff may then seek relief upon a proper application and showing by a later suit.

■ Lastly, plaintiff claims error by the granting of injunctive relief against plaintiff on the defendant's counterclaim. Plaintiff points to the trial court's findings that neither party was guilty of common law trade name infringement or unfair competition, that plaintiff had no present plans to expand its business by opening an actual location in New Mexico or Southwest Colorado and no plans to do so within the reasonably foreseeable future. Plaintiff argues that since the facts found show no basis for relief against plaintiff, the counterclaim should have been dismissed.

The trial court's conclusions of law spell out the reasoning for granting relief on the counterclaim, despite the findings cited (App. 38):

8. Plaintiff asserts the right to do business within the state of New Mexico and Montezuma and La Plata counties in Colorado, and asserts the right to the exclusive use of the name "Value House" and the representation of a house in connection with a general merchandise business in said areas.

Should plaintiff engage in further advertising, or carry out its asserted right to do business in New Mexico and Montezuma and La Plata counties in Colorado, plaintiff would thereby trade on and benefit by defendant's reputation, advertising, and good will, would cause confusion between the two businesses in those areas, would dilute the distinctive quality of defendant's name and reputation, and would constitute unfair competition.

Therefore the court enjoined the plaintiff permanently from engaging in the retail general merchandise business under the name "Value House" and the representation and from advertising or soliciting business under the name or representation in New Mexico and La Plata and Montezuma Counties, Colorado.

While injunctive relief is most often granted against some actual use of the infringing mark in the disputed area, such relief has been granted in similar circumstances where the plaintiff is asserting the right to such use, but has not actively been using the mark in a disputed market. See *J. A. Dougherty's Sons v. Kasko Distillers Products Corp.,* 35 F.Supp. 561, 565 (E.D.Pa.). We cannot say the trial court's discretion was abused in granting equitable relief on the counterclaim. See *Esquire Inc. v. Esquire Slipper Mfg. Co.,* 243 F.2d 540, 545 (1st Cir.).

We conclude that the remaining contentions of plaintiff are without merit and require no further discussion. Accordingly, for the reasons stated the judgment is affirmed.