**GTE CORPORATION,**
**Plaintiff–Appellant,**

v.

**David R. WILLIAMS, d/b/a General Telephone, Defendant–Appellee.**

No. 86–2260.

United States Court of Appeals,
Tenth Circuit.

May 25, 1990.

Rehearing Denied July 9, 1990.

Jeffrey A. Schwab of Abelman Frayne Rezac & Schwab, New York City, for plaintiff-appellant.

Robert S. Campbell, Jr. (Thomas P. Melloy with him on the brief), of Watkiss & Campbell, Salt Lake City, Utah, for defendant-appellee.

Before HOLLOWAY, Chief Judge, LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

In this action for infringement of a federally registered service mark, the district court found in favor of defendant David R. Williams. On appeal, plaintiff GTE Corporation (GTE) attacks the legal and factual bases of the court's decision.

## I *Background*

Plaintiff was formed in 1935 as "General Telephone Corporation." Its corporate name was changed in 1959 to "General Telephone & Electronics Corporation," and in 1982 to its current name, "GTE Corporation." GTE has four principal groups of subsidiaries, one of which is a network of telephone operating companies. Most of these telephone operating companies have names that begin "General Telephone Company of," followed by a geographic modifier. All of the telephone subsidiaries employ "General Telephone" as a trade name, trademark, and service mark.

Williams operates a sole proprietorship engaged in providing mobile telephone and paging services under the trade name "General Telephone" in the area of Utah known as the Wasatch Front. Williams adopted "General Telephone" as a trade name, trademark, and service mark in 1974, and has used it continuously in the Wasatch Front area since that time.

In June 1981 GTE applied to the Patent and Trademark Office for registration on the Principal Register of the service mark "General Telephone" for provision of telecommunications services. The mark was registered in October 1982. GTE filed the instant suit shortly thereafter, alleging infringement of a federally registered mark under sections 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. §§ 1114(1)(a)-(b), and false designation of origin under Lanham Act section 43(a), 15 U.S.C. § 1125(a). GTE sought injunctive relief and damages, including treble damages, pursuant to sec-

**538**

tion 35 of the Act, 15 U.S.C. § 1117.[1]

In *GTE Corp. v. Williams*, 731 F.2d 676 (10th Cir.1984), this court reversed the district court's order granting GTE's motion for a preliminary injunction. On remand, the case was tried to the court de novo. The district court found Williams entitled, pursuant to 15 U.S.C. § 1052(d), to concurrent registration of the mark for the Wasatch Front, and to its exclusive use in that region. I R. tab 127, at 16 ¶ 14; *GTE Corp. v. Williams*, 649 F.Supp. 164, 176 (D.Utah 1986).

The district court reasoned as follows: "General Telephone" is a descriptive rather than a suggestive mark, and hence is entitled to protection only upon a showing of secondary meaning; GTE failed to establish secondary meaning of the mark in the Wasatch Front; Williams' use of the mark in the Wasatch Front was not likely to cause confusion in the marketplace; Williams established a statutory defense to the infringement claims by proving adoption as an intermediate junior user of the mark without knowledge of the senior user's use, Lanham Act section 33(b)(5), 15 U.S.C. § 1115(b)(5); Williams established the common law defense to infringement of good faith adoption in a remote area, which defense was also applicable to the section 43(a) claim; and, as an alternative holding, GTE's claims were barred by laches.

GTE attacks every step of the court's reasoning process. We will deal only with those objections relevant to our decision.

## II  *Evidentiary Presumptions Arising from Registration*

First, GTE argues that because the Patent and Trademark Office granted the registration without requiring proof of secondary meaning, the trial court should have adopted a presumption that "General Telephone" is a suggestive rather than a descriptive mark. Most courts that have considered the issue do hold that the Patent and Trademark Office's decision to register a mark without requiring proof of secondary meaning creates a rebuttable presumption that the mark is suggestive, arbitrary, or fanciful rather than merely descriptive. *See, e.g., Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1528–29 (4th Cir.1984); *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 673 (7th Cir.1982); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir.1976). *But see EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375, 379 (7th Cir.1984) ("[T]he registration of a trademark does not confer upon that mark a presumption of nondescriptiveness."). The reasons for adopting this presumption have been articulated by the Fourth Circuit:

"[T]he Patent and Trademark Office is the administrative agency initially charged with determining the registerability of a mark or figure and in exercising that function it must necessarily decide whether the mark is descriptive or suggestive, since the Patent and Trademark Office may not grant registration to a mark which it finds to be 'merely descriptive.' Of course, if the mark is refused registration because it is found to be descriptive, the applicant may proceed under § 1052(f) to assert that its mark, though descriptive, has acquired what is known as a secondary meaning and, if the applicant proves secondary meaning, it can secure registration.[2] If

**1.** Although GTE's complaint invoked the district court's pendent jurisdiction "for common law unfair competition," I R. tab 1, at 2, and GTE's brief to this court mentions that this action was brought, in part, "for common law trademark infringement and unfair competition," Brief for Plaintiff–Appellant at 5, GTE did not in fact plead any common law cause of action in its complaint, the pretrial order did not set forth a common law cause of action, and the district court's opinion did not address a common law cause of action. Thus, there is no common law claim in this case.

**2.** The Lanham Act requires the Patent and Trademark Office to grant registration of marks that do not fall within certain statutory bars, enumerated in section 2 of the Act, 15 U.S.C. § 1052. The Patent and Trademark Office has the burden of proving "that the mark sought for registration falls within the statutory bars of § 2." 2 J. McCarthy, *Trademarks and Unfair Competition* § 19:25, at 928 (2d ed. 1984). One of those bars, section 2(e)(1), prevents registration of marks that are "merely descriptive." Section 2(f), however, allows for registration of a mark "which has become distinctive of the

the Patent and Trademark Office finds the mark suggestive on the other hand, it will grant registration without requiring proof of secondary meaning. The significance of registration without proof of secondary meaning ... is that the Patent and Trademark Office has 'concluded' that the mark or figure was not ' "merely descriptive" "but suggestive" ' and this 'essential fact [*i.e.*, the action of the Patent and Trademark Office] must be considered prima facie correct by a court in considering the validity of a trademark. . . .' "

*Pizzeria Uno*, 747 F.2d at 1528–29 (footnotes and citations omitted).

The record in this case reveals that the Patent and Trademark Office registered the mark "General Telephone" without requiring any proof of secondary meaning. The district court acknowledged the evidentiary presumption under 15 U.S.C. § 1115(a) of exclusive right to use a registered mark. *GTE Corp.*, 649 F.Supp. at 168 n. 4 (quoting *Value House v. Phillips Mercantile Co.*, 523 F.2d 424, 429 (10th Cir.1975)). Nonetheless, GTE argues that Williams introduced no evidence on the issue of descriptive versus suggestive, and that the district court therefore erred in not finding the mark suggestive and protectable without proof of secondary meaning.

■ We need not resolve whether the district court properly applied the presumption, however, because even assuming the nationwide validity of GTE's registered mark, GTE could not prevail on its infringement claims without proving that Williams' use of the mark was likely to cause confusion in the marketplace. *See Value House*, 523 F.2d at 429; *Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 558 (10th Cir. 1984). Further, nationwide validity of the mark would not preclude assertion of the common law defense of innocent adoption in a remote area. We conclude that the district court applied the proper legal standards, and its findings on these issues are

supported by the record. Hence, its judgment must be affirmed.

### III  *Likelihood of Confusion*

■ In order to prevail on its infringement claims under sections 32(1)(a) and (b) of the Lanham Act, GTE was required to prove that Williams' use of the mark "General Telephone" was "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). The likelihood of confusion test also governs GTE's false designation of origin claim under section 43(a). *Amoco*, 748 F.2d at 558. We have held that likelihood of confusion is determined with the aid of the factors set out in *Restatement of Torts* § 729 (1938), see, e.g., *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 940 (10th Cir.1983), and is "considered not only in the context of confusion of source, but also in the context of confusion that results from a mistaken belief in common sponsorship or affiliation." *Amoco*, 748 F.2d at 558. Likelihood of confusion is a question of fact subject to the clearly erroneous standard of review. *J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1471 n. * (10th Cir. 1985).

The district court found that "Williams' use of the 'General Telephone' mark in the Wasatch Front is not likely to cause confusion in the marketplace concerning the source, origin or sponsorship of his paging and mobile/portable telephone services." I R. tab 127, at 16 ¶ 12. GTE does not challenge this finding directly, acknowledging that the district court "correctly identified" the issue and properly relied upon *Amoco*. Brief for Plaintiff–Appellant at 31. Rather, GTE argues that the district court in fact considered only likelihood of confusion as to *source*, improperly giving only "lip serve [sic] to the broader definition" endorsed in *Amoco*. *Id.* GTE then reviews the evidence presented under the *Restatement* factors, asserting that "[w]hen the evidence is considered in the proper context, ... a finding of likelihood of confusion is inescapable." *Id.* at 32.

---

applicant's goods." The term "has become distinctive" in the Lanham Act means "has ac-

quired secondary meaning." *See, e.g.,* 1 *id.* § 15:2F.

GTE's review of the evidence reveals that its real objection is to the court's *weighing* of the evidence, not to the legal standard applied. Thus GTE attacks the credibility of Williams' testimony, the correctness of the court's conclusion that the marketing areas of Williams and GTE do not overlap, and the weight given to evidence of actual confusion. *Id.* at 32–37. The court's factual findings are not clearly erroneous.

### IV  Defenses

The absence of likelihood of confusion prevents GTE from obtaining any present relief against Williams' use of "General Telephone" in the Wasatch Front. The district court went on, however, to hold that Williams established certain defenses which give him superior rights to use of the mark in that area. Specifically, the court held that Williams had established a statutory defense under Lanham Act section 33(b)(5), 15 U.S.C. § 1115(b)(5), as interpreted by this court in *Value House*, 523 F.2d at 429, as well as the common law defenses of good faith adoption in a remote area and laches.

### A  Section 33(b)(5)

Section 33(a) of the Lanham Act, 15 U.S.C. § 1115(a), provides that registration of a mark "shall not preclude an opposing party from proving any legal or equitable defense or defect which might have been asserted if such mark had not been registered." This section makes available common law defenses to alleged infringers of registered marks. Section 33(b) provides:

"If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be considered conclusive evidence of the registrant's exclusive right to use the registered mark ... except when one of the following defenses or defects is established:

. . . .

(5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter or publication of the registered mark under subsection (c) of section 1062 of this title: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved."

15 U.S.C. § 1115(b)(5).

In *Value House*, 523 F.2d at 429, we held that because the section 33(b)(5) defense is available even against incontestable marks, it must *a fortiori* be available against contestable marks.[3] This holding makes sense if section 33(b)(5) is a defense to the merits of an infringement action. The Supreme Court subsequently stated, however, that

"the seven defenses enumerated in § 33(b) are not substantive rules of law which go to the validity or enforceability of an incontestable mark. Instead, the defenses affect the evidentiary status of registration where the owner claims the benefit of a mark's incontestable status. If one of the defenses is established, registration constitutes only prima facie and not conclusive evidence of the owner's right to exclusive use of the mark."

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 199 n. 6, 105 S.Ct. 658, 664 n. 6, 83 L.Ed.2d 582 (1985) (citation omitted). Because section 33(b)(5) is a defense only to the conclusiveness of the evidentiary presumption arising from incontestability, it is clear that "[f]or marks whose registrations have not yet become incontestable, § 33(b)(5) is irrelevant." 2 J. McCarthy, *Trademarks and Unfair Competition* § 26:18D, at 331 (2d ed. 1984) [hereinafter *Trademarks and Unfair Competition*].

---

**3.** With exceptions not applicable here, a mark becomes incontestable if continuously used for five consecutive years after registration, provided it does not infringe valid rights acquired by common law usage before the date of publication of the registered mark. 15 U.S.C. § 1065. Five years had not passed before the contest in the instant case between GTE and Williams; thus GTE's mark is clearly contestable.

Because GTE's registration had not yet become incontestable, we cannot affirm the district court's finding that section 33(b)(5) bars GTE's infringement claims.

## B  Tea Rose–Rectanus

The common law has long recognized that "the national senior user of a mark cannot oust a geographically remote good-faith user who has used the mark first in a remote trade area." 2 *Trademarks and Unfair Competition* § 26:1D, at 287; *see Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916) *(Tea Rose); United Drug Co. v. Theodore Rectanus Co.,* 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918).

■ Williams is an intermediate junior user (i.e., one who adopted the mark after the senior user but before the senior user's registration) for whom the *Tea Rose–Rectanus* defense is available. Williams had the burden of proof as to both the "good faith" and the "remoteness" elements of the defense. The court found that Williams met his burden. GTE challenges the court's findings, which we review under the clearly erroneous standard.

### 1.  Good Faith

■ The district court found that at the time Williams adopted the General Telephone name and mark in 1974, he had heard of a company called " 'General Telephone and Electronics of California' in the context of its involvement in some litigation in California." I R. tab 127, at 10 ¶ 64. The court also found that, at the same time, Williams "had no knowledge that GTE used or claimed to use 'General Telephone' as a trade or service mark, or that any other entity used or claimed to use that mark," *id.* at 10–11, ¶ 65, and that Williams did not intend to benefit from GTE's reputation and goodwill, *id.* at 11, ¶ 66.

■ GTE argues that the level of knowledge found by the district court, by itself, should defeat a finding of good faith. There is some authority for the proposition that mere knowledge of a prior user's mark is sufficient to destroy the good faith of a subsequent user. *See Money Store v. Har-*

*riscorp Fin., Inc.,* 689 F.2d 666, 674–75 (7th Cir.1982); *Weiner King, Inc. v. Weiner King Corp.,* 615 F.2d 512, 522–23 n. 6, 204 U.S.P.Q. 820 (C.C.P.A.1980); *see also* 2 *Trademarks and Unfair Competition* § 26:3, at 290–91. While a subsequent user's adoption of a mark with knowledge of another's use can certainly support an inference of bad faith, *Jordache Enters., Inc. v. Hogg Wyld, Ltd.,* 828 F.2d 1482, 1485 (10th Cir.1987); *Beer Nuts Inc. v. Clover Club Foods Co.,* 805 F.2d 920, 927 (10th Cir.1986), mere knowledge should not foreclose further inquiry. The ultimate focus is on whether the second user had the intent to benefit from the reputation or goodwill of the first user. *Jordache,* 828 F.2d at 1485; *see also General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622, 627 (8th Cir. 1987) ("Knowledge of another's product and an intent to compete with that product is not, however, equivalent to an intent ... to mislead and to cause consumer confusion."); *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 48 (2d Cir.1978) (good faith despite actual and constructive knowledge of prior user's mark), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *El Chico, Inc. v. El Chico Cafe,* 214 F.2d 721, 726 (5th Cir.1954) (knowledge is not inconsistent with good faith); *Restatement of Torts* § 732 comment a (1938). In *Value House,* we upheld a district court's finding that a defendant adopted a mark in good faith despite actual knowledge of use of a nearly identical mark by a third party, when it "did not select the mark for the purpose of benefiting from plaintiff's reputation and goodwill". 523 F.2d at 431.

It may be that only in unusual cases will a defendant be found to have both knowledge of a senior user and good faith adoption of the allegedly infringing mark. In this case, defendant's admitted knowledge of a company called "General Telephone & Electronics of California," while not equivalent to knowledge of a senior user's use of the mark "General Telephone," would, considered by itself, appear to make his good faith claim somewhat improbable. But we are not the trier of fact. Federal Rule of

Civil Procedure 52(a), which sets out the clearly erroneous standard of review, itself "emphasize[s] the special deference to be paid credibility determinations ...," *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985), by stating particularly that "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The court's finding that Williams acted in good faith is not clearly erroneous.

### 2. *Remoteness*

With regard to the remoteness aspect of the defense, the district court made the following findings: GTE does not have, and has never had, any operating subsidiaries in Utah or in the adjacent states of Nevada, Arizona, Colorado or Idaho (with the exception of a portion of the northern panhandle of Idaho). I R. tab 127, at 7 ¶ 40. None of GTE's operating subsidiaries has ever done business or provided services in Utah. *Id.* ¶ 42. Before 1974, GTE sold no products and provided no services in Utah under the mark "General Telephone," *id.* at 8 ¶¶ 46–47, nor does it do so now, *id.* ¶ 48. GTE and Williams do not compete in Utah or in any other place under the name or mark "General Telephone." *Id.* at 9 ¶ 54. Neither GTE nor its operating subsidiaries has ever conducted advertising in Utah for specific operating subsidiaries (which use the "General Telephone" mark), and none of the advertising of and for the specific operating subsidiaries was ever shown or run in Utah. *Id.* at 7 ¶¶ 39, 43.

These findings are not clearly erroneous. They sufficiently establish the "remoteness" element of the *Tea Rose–Rectanus* defense. *See, e.g., Value House*, 523 F.2d at 431. Thus GTE's infringement claims must fail.

### C Section 43(a)

 The district court held the *Tea Rose–Rectanus* defense applicable to

---

GTE's claim under section 43(a), 15 U.S.C. § 1125(a). GTE asserts that this was error. We agree with Professor McCarthy, however, that when "§ 43(a) is used as the basis for an alternative count along with a count for infringement of a registered mark, a good faith remote use defense good against the registration should be good against the § 43(a) count as well." 2 *Trademarks and Unfair Competition* § 26:18D, at 331–32; *accord Spartan Food Sys., Inc. v. HFS Corp.*, 813 F.2d 1279, 1282, 1284 (4th Cir.1987).[4]

### V Conclusion

For the reasons stated above, the district court properly held that Williams is entitled to concurrent registration of the mark "General Telephone" for the Wasatch Front (only), and to exclusive use of the mark in that area.

AFFIRMED.

---

**4.** In view of our analysis of the other issues, we do not reach the question of the propriety of the district court's alternative holding that GTE was barred by laches from enjoining Williams' use of the mark.