862 P.2d 1252

**S & S INVESTMENTS, INC., Plaintiff–Appellee/Cross–Appellant,**

v.

**HOOPER ENTERPRISES, LTD., Defendant–Appellant/Cross–Appellee.**

**No. 13352.**

Court of Appeals of New Mexico.

Sept. 15, 1993.

Darrell N. Brantley, Alamogordo, for plaintiff-appellee/cross-appellant.

Lloyd O. Bates, Jr., Lloyd O. Bates, Jr. Law Firm, Las Cruces, for defendant-appellant/cross-appellee.

## OPINION

MINZNER, Chief Judge.

This is a trade name infringement case requiring interpretation of New Mexico's Trademark Act, NMSA 1978, Sections 57-3-1 to -12 (Repl.Pamp.1987 & Cum.Supp. 1992). Defendant appeals from a judgment precluding it from using the name "Showtime" for its video rental store in Alamogordo. Plaintiff cross-appeals the trial court's refusal to award damages for Defendant's use of that name prior to, and pending the outcome of, this action. We affirm.

*FACTS*

Plaintiff owned two video rental stores in Alamogordo. In 1989, Plaintiff was negotiating with Drum Enterprises, owned by Harlan Drum, to sell the video stores to Drum. Drum already owned a number of video stores in Las Cruces named "Showtime" video outlets. Drum had purchased these stores from a member of the Hilburn family. This family owned video stores named "Showtime" in Hobbs, Roswell, Brownsville (Texas), and a few other towns. One member of the Hilburn family, Larry Hooper, owned a Showtime store in Deming. His enterprise is the defendant in this case, and Defendant will be referred to as Hooper for the balance of this opinion.

At Harlan Drum's request, and in order to facilitate the proposed sale, Plaintiff began to convert the two Alamogordo stores (called Video 1) to Showtime stores. Before the sale could be consummated, however, Harlan Drum died. Plaintiff continued to negotiate with Drum's estate, hoping to complete the sale. To that end, Plaintiff converted its computer software to the same software used by the Showtime

stores in Las Cruces. This conversion occurred in July 1989, and at that time, customers began to receive receipts and other membership documents with the name Showtime on them rather than Video 1. At around the same time, it began to be apparent that the estate would not be able to purchase the Alamogordo stores. Plaintiff attempted to sell the stores to Bill Hilburn, Jerry Hilburn, and Larry Hooper, but none of these individuals wished to purchase the stores. Odell Spurlin, one of the owners of S & S Investments, testified that he was not told at that time that Hooper was interested in opening a Showtime store in Alamogordo. Spurlin also testified that he obtained permission from Drum's estate, which had the right to use the Showtime name in Las Cruces, to use that name in Alamogordo. Plaintiff continued to do business as Showtime, rather than Video 1. In April 1990, Hooper opened his own Showtime video store in Alamogordo. He had already registered the trade name "Showtime" with the Secretary of State of New Mexico in February of 1989, prior to the time Plaintiff began to do business under that name. However, Hooper's actual use of the name did not begin until over a year later.

After a bench trial, the trial court ruled that Hooper's prior registration of the name did not bar Plaintiff from appropriating the name through actual use. The court further ruled that Plaintiff's prior actual use in Alamogordo entitled Plaintiff to continue to use the name and to prevent Hooper from using the name in Alamogordo. Finally, the court ruled that Plaintiff was not entitled to force Hooper to disgorge all profits earned from his Alamogordo store prior to the court's decision.

*APPEAL: RIGHT TO USE SHOWTIME NAME IN ALAMOGORDO*

Hooper maintains that his prior registration of the Showtime trade name granted him the right to use that name to the exclusion of any subsequent user in any location within New Mexico. He relies on federal cases interpreting the federal Lanham Act, 15 U.S.C.A. Sections 1051 to 1127 (1976). It is true that under the Lanham Act, prior federal registration of a trade name affords protection against subsequent use and provides constructive notice of a claim based on the Act. *See Burger King of Florida, Inc. v. Hoots*, 403 F.2d 904, 906–07 (7th Cir.1968); 15 U.S.C.A. § 1072 (1963). New Mexico's trademark statute, however, differs significantly from the Lanham Act, and this appeal concerns only the New Mexico statute. Our statute contains no language similar or analogous to Section 1072's constructive notice provision. In addition, unlike the Lanham Act, our statute specifically preserves common law rights to trademarks acquired in good faith at any time, and states that nothing in the trademark statute shall affect such rights. Section 57–3–12. As discussed below, this provision supports the trial court's decision. Plaintiff established a good faith acquisition of a trade name at common law, and its rights are superior to those of Hooper, whose prior state registration was not accompanied by prior use in the market area in question.

The effect of New Mexico's specific retention of common law rights is to limit the rights of a state registrant, such as Hooper, by the bona fide rights of common law users, such as Plaintiff. *See Tally–Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1022–1024 (11th Cir. 1989) (discussing Florida statutory provision identical to Section 57–3–12; stating that such provision means the statute provides little, or no, additional protection to that provided by common law; and applying market area analysis, rather than granting statewide protection to prior registrant); *see also* 4A Rudolph Callmann, *The Law of Unfair Competition Trademarks and Monopolies* § 25.50 (Louis Altman, 4th ed. 1983) (discussing state trademark statutes in general, and concluding that most do not confer any rights greater than those available under the common law). Registration under our state statute does not preclude a subsequent user of a trade name from acquiring the right to use that name in a particular market, as long as the registrant was not previously using the name in that market. *See Tally–Ho,*

*Inc.,* 889 F.2d at 1023 (under common law, it is priority of use in a particular market that establishes rights to a trade name in that market); *Value House v. Phillips Mercantile Co.,* 523 F.2d 424, 430 (10th Cir.1975) (under common law, priority of appropriation, or use, rather than adoption, determines question of right to use a trademark). In sum, Section 57–3–12 accords greater weight to prior good faith use of a trade name than to its registration. For that reason, we reject Hooper's argument that his prior registration of the Showtime name granted him the statewide right to use that name in any location.

■ Having determined that Hooper's prior registration did not automatically afford him a superior right to use the Showtime name in Alamogordo, we now address the question of whether the trial court correctly found that Plaintiff acquired the right to use that name in good faith under the common law. *See* § 57–3–12. Spurlin testified that when he was converting the video stores in Alamogordo to Showtime stores, he did not know Hooper planned to open a Showtime store in Alamogordo. He also testified that the only reason he began using the Showtime name was to facilitate the sale of his stores to Harlan Drum. In addition, Spurlin stated that he obtained permission from Drum's successors, who he believed had the right to use the name in Las Cruces, to use the name in Alamogordo. Finally, he testified that he had no knowledge of Hooper's prior registration of the name with the Secretary of State. All of this testimony provided substantial evidence to support the trial court's determination that Plaintiff's appropriation of the Showtime name in Alamogordo was in good faith, rather than a deliberate attempt to infringe on Hooper's rights. *Cf. Nalpac, Ltd. v. Corning Glass Works,* 784 F.2d 752, 755 (6th Cir.1986) (citing *Triumph Hosiery Mills, Inc. v. Triumph Int'l Corp.,*

308 F.2d 196, 199 (2d Cir.1962)) ("innocent" junior user, in damages context, is one whose use was not attributable to an intent to obtain a free ride on the reputation of the trademark's owner).

■ There was also substantial evidence supporting the trial court's conclusion that Plaintiff had properly appropriated the name in Alamogordo under the common law. At common law, the first person to use a trade name in a particular geographic market acquires rights to the name in that market and may enjoin infringing uses. *Tally–Ho, Inc.,* 889 F.2d at 1022–23; *Value House,* 523 F.2d at 430. The undisputed evidence in this case was that Plaintiff began actual use of the Showtime name in Alamogordo before Hooper. There was also evidence that the relevant market area for a video rental store is limited to the geographic area immediately surrounding the stores, or the distance people would normally be willing to drive on a regular basis to rent and return videos. Therefore, there was ample basis for the trial court to conclude that the relevant market in this case for Plaintiff's and Hooper's businesses was the community of Alamogordo, and that Plaintiff was the prior user in that market.[1]

Based on the foregoing, we hold that prior registration of a trade name under New Mexico's trademark statute does not foreclose another party from acquiring the right to use that name in good faith under the common law. We also affirm the trial court's determination that Plaintiff has the exclusive right to use the Showtime name for video rental stores located in Alamogordo.

## CROSS–APPEAL: RIGHT TO ACCOUNTING OF HOOPER'S PROFITS

Plaintiff appeals the trial court's refusal to award any damages as a result of Hooper's simultaneous use of the Showtime

---

1. We note that one possible theory Hooper could have pursued below would have been to argue that Alamogordo was within the "zone of natural expansion" of his Showtime store in Deming. *See Tally–Ho, Inc.,* 889 F.2d at 1023 (a trademark user's rights are limited to those territories in which it actually uses its mark or into which it might naturally expand, called the "zone of natural expansion"). However, Hooper presented no evidence or argument on this issue and has not advanced such a theory on appeal. Therefore, we have not considered it in deciding this case.

name in Alamogordo. He argues that he was entitled to force Hooper to disgorge all profits earned by Hooper from his Alamogordo store. According to Plaintiff, he had a prima facie entitlement to such profits simply because of Hooper's wrongful use of the trade name, and it was up to Hooper to rebut that showing by establishing that any profits earned were not a product of the use of the Showtime name but were due to some other factor.

We disagree with Plaintiff's premise that all he had to show was an infringement on his trade name to establish a prima facie case for an accounting of profits. The remedy of an accounting for profits differs from an award ðf the damages suffered by the rightful owner of a trade name. Damages, where proven, should be awarded, regardless of the good or bad faith of the infringer. *See General Elec. Co. v. Speicher,* 877 F.2d 531, 535 (7th Cir.1989). An accounting for profits, however, is an equitable remedy, to be applied only where equitable principles justify its application. *See Hamilton–Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 251, 259, 36 S.Ct. 269, 272, 60 L.Ed. 629 (1916) (equity requires trademark infringer to account for and yield up gains to the true owner; an infringer's profits are an equitable measure of compensation, allowed by analogy to a trustee's liability for profits acquired by wrongful use of trust property); *Nalpac, Ltd.,* 784 F.2d at 754 (under Lanham Act, damages are subject to principles of equity; good faith is a defense to a claim for damages under the Act); 4 Callmann, *supra,* § 22.49 (discussing right to an accounting under the Lanham Act); I George E. Palmer, *The Law of Restitution* § 2.12, at 164 (1978) (innocent trademark infringer usually not held accountable for profits). Under the Lanham Act, the grant of an accounting lies within the discretion of the Court. 4 Callmann, *supra,* § 22.49 at 235. Because "the Lanham Act does not afford a plaintiff any new rights to an accounting," *id.,* we see no reason not to apply the same principle to the common law right on which Plaintiff relies.

The trial court, therefore, had the equitable power to grant or deny the accounting for profits requested by Plaintiff in this case. The court's decision should be reversed only if that decision was an abuse of the court's discretion. *See Padilla v. Lawrence,* 101 N.M. 556, 562, 685 P.2d 964, 970 (Ct.App.) (decision as to whether equitable relief should be granted is addressed to the trial court's sound discretion, and will not be reversed on appeal absent clear abuse of that discretion), *cert. denied,* 101 N.M. 419, 683 P.2d 1341 (1984). In evaluating the exercise of discretion in this case, we consider the use of the remedy under the Lanham Act.

The remedy of an accounting of an infringer's profits is most often imposed when the infringement is in bad faith, and is not warranted when the infringer acted innocently. *See Frisch's Restaurants, Inc. v. Elby's Big Boy,* 849 F.2d 1012, 1016 (6th Cir.1988) (Lanham Act case); *Nalpac, Ltd.,* 784 F.2d at 755 (same). An error by the alleged infringer in predicting the outcome of litigation on the question of trade name ownership is not, by itself, proof of the requisite bad faith necessary to support such a remedy. *Nalpac, Ltd.,* 784 F.2d at 755. Instead, the infringer's use of the name must be attributable to a deliberate effort to cause confusion or to profit from the established good reputation of the rightful trade name owner. *Id.*

There was evidence in this case that Hooper already had a Showtime store in Deming, registered the Showtime name with the Secretary of State months before Plaintiff began using it in Alamogordo, and believed that the right to use the name belonged only to family members or their designees. Furthermore, Plaintiff had been using the name for only a few months when Hooper began his own use, and therefore had not had a long period of time in which to build a valuable reputation for the name. In addition, the trial court specifically stated that it was not clear whether Hooper's Alamogordo income was due to the name of the store or to its location, on a highway leading out of town to an air force base. Plaintiff did not attempt to

show that business at his Showtime stores had suffered due to Hooper's use of the same name for his store. The foregoing evidence indicates that Hooper's use of the Showtime name was not a result of an effort to cash in on Plaintiff's established good reputation, but was due to his good faith belief that he, and not Plaintiff, was entitled to use the name in Alamogordo. The evidence also indicates that Plaintiff did not prove any major adverse consequences resulting from Hooper's use of the Showtime name. Under these circumstances, it was within the trial court's discretion to refuse to award the accounting requested by Plaintiff. *See Frisch's Restaurants, Inc.*, 849 F.2d at 1016; *Nalpac, Ltd.*, 784 F.2d at 755–56. We therefore affirm the trial court's decision on this issue.

## CONCLUSION

Pursuant to the foregoing analysis, we affirm the trial court's decision in its entirety.

IT IS SO ORDERED.

ALARID and CHAVEZ, JJ., concur.