FIRST SAVINGS BANK, F.S.B., Plaintiff,

v.

FIRST BANK SYSTEM, INC. and First Bank, fsb, Defendants.

No. 95–4020–SAC.

United States District Court, D. Kansas.

July 11, 1995.

---

Thomas H. Van Hoozer, William A. Rudy, Robert D. Hovey, John M. Collins, Hovey, Williams, Timmons & Collins, Kansas City, MO, for plaintiff.

Brett C. Coonrod, Edward W. Mullen, Thomas M. Deacy, Deacy & Deacy, Kansas City, MO, Peter Lancaster, Stephen R. Baird, Dorsey & Whitney, Minneapolis, MN, for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

This trademark infringement case comes before the court on the defendants' motion for summary judgment (Dk. 127), the plaintiff's motion for relief pursuant to Rule 56(f) of the Federal Rules of Civil Procedure (Dk. 141), the plaintiff's motion for summary judgment (Dk. 142), the plaintiff's motion to strike (Dk. 146), and the plaintiff's motion to reconsider (Dk. 196). The plaintiff brings this action under 15 U.S.C. § 1125(a) seeking to enjoin the defendants from using the names and marks of "First Bank(s)," "First Bank System," or "First Bank Kansas" for their banks servicing the Kansas counties of Douglas, Riley, Geary, Pottawatomie and

Marshall. The plaintiff also asserts claims under Kansas law for service mark infringement, common law service mark infringement, and unfair competition.[1] After closely reviewing the written motions, memoranda and attached exhibits, the court finds that oral argument would not materially assist the court in understanding the facts and arguments that have been presented. The court denies the parties' requests for oral argument.

**Summary Judgment Standards**

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law governing the suit dictates which facts are material or not. *Id.* at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case." *Martin v. Nannie and Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The court views the evidence and draws any possible inferences in the light most favorable to the non-moving party. *MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1117 (10th Cir.1991).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

Just because both parties move for summary judgment arguing the absence of genuine issues of material fact does not mean the court may ignore the above standards and simply enter judgment accordingly. *Society of Financial Examiners v. National Ass'n of Certified Fraud Examiners*, 41 F.3d 223, 226 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). At the same time, the parties' mutual arguments may reveal that there is no genuine dispute over material facts. For purposes of this motion, the court considers the following facts to be uncontroverted.

**Background Facts**

1. The plaintiff First Savings Bank, F.S.B., is a federally chartered savings bank having its principal place of business in Manhattan, Kansas. In 1987, it opened branch offices in Junction City and Lawrence, Kansas.

---

**1.** There is no dispute that the essential elements to these different claims do not differ materially. The court considers its discussions and rulings to apply with equal force to all of the plaintiff's claims.

2. The defendant First Bank System, Inc., is a corporation having its principal place of business in Minneapolis, Minnesota. The defendant Metropolitan Federal Bank, fsb, is now known as First Bank, fsb. The defendant First Bank System, Inc. merged with the parent company of Metropolitan Federal Bank, fsb, in late January of 1995. Presently, the parent defendant, First Bank System, Inc., through its commercial banks, savings banks, trust companies, and non-bank subsidiaries, operates primarily in eleven states, including Kansas.

3. In connection with the merger, Metropolitan Federal Bank, fsb, became a party to the Master Service Agreement with First Bank System, Inc., thereby acquiring "a non-exclusive and nontransferable license" to use the trade marks and service marks of First Bank System. On February 21, 1995, Metropolitan Federal Bank, fsb, changed its legal name to First Bank, fsb. First Bank, fsb currently operates branch offices in Lawrence and Manhattan, Kansas and many other cities in the states of Kansas, Nebraska, Iowa, North Dakota and Wyoming.

4. The defendants intend to use the name, "First Bank Kansas," to market and promote its branches in Kansas. The Kansas branches, however, will use some standard documents, brochures, statements, and forms that bear only the name of "First Bank."

**Plaintiff's Use and Adoption of "First-Bank"**

5. The plaintiff in 1887 was chartered as "First National Bank of Manhattan." Some of its advertising and promotional material dating before 1983 shows that the First National Bank occasionally used marketing material and letterhead that emphasized the "First" in its name. On such occasions, however, the plaintiff continued to refer to itself by the full name of "First National Bank." [2]

6. In September of 1983, the plaintiff formally adopted and began use of the mark "FirstBank." The plaintiff announced and promoted its new logo, mark and name. In September of 1983, the plaintiff ran a newspaper advertisement announcing:

> We have a new name, a new logo, a new look. But, we're still the same people you've always known—local bankers who care about Manhattan.
>
> You've known us for years as First National Bank. Now we're FirstBank, a name that tells you we're the number one bank in town.

(Plaintiff's Complaint, Dk. 1, Ex. C).

7. In 1986, the plaintiff converted to a federal savings bank and changed its banking charter name to "First Savings Bank, F.S.B." The plaintiff continued using the mark and name of "FirstBank."

8. The plaintiff opened a FirstBank branch in Junction City, Kansas, in March of 1987 and a FirstBank branch in Lawrence, Kansas, in September of 1987. The plaintiff claims rights in a trade territory consisting of the three counties where its bank and branches are located: Douglas, Geary, and Riley; and two contiguous counties: Marshall and Pottawatomie.

9. The plaintiff hired Peter Scofield, a trademark lawyer in Overland Park, Kansas, to conduct a trademark search for "First-Bank." In late 1986, Scofield sent the plaintiff a written report identifying thirty-two federal registrations along with copies. Among the thirty two was the registered service mark "First Bank System," Reg. No. 915,249. [3]

10. In 1986, while preparing to open a branch bank in Lawrence, Kansas, the plaintiff learned that another Lawrence bank, the University State Bank, had registered a service mark, "FIRSTBANK", with the State of Kansas in August of 1985. A dispute arose between the two banks over the simultaneous use of the same service marks in Lawrence. This dispute was resolved on September 30, 1988, when the plaintiff acquired by assignment all rights and good will to the state registered service mark, "FIRSTBANK."

---

2. The plaintiff does not cite a single piece of evidence where it marketed, promoted, or referred to itself as "First" or "Bank" without separating those terms by "National."

3. This statement of fact is not controverted by the inability of Philip Brokenicky or James Wild to remember the specific contents of Scofield's report.

11. The plaintiff has never sought federal registration for its mark, "FirstBank."

**Defendant's Federal Trademark Registrations**

12. On October 1, 1968, First Bank System filed its application for a registered service mark, "First Bank System and design," with the United States Patent and Trademark Office ("PTO"). The application showed the words, "First Bank System," against a black television tube background. The PTO examiner denied the application initially on two grounds. First, the applicant's mark so resembled another registered mark "as to be likely to cause confusion, or to cause mistake or to deceive." The PTO's other reason was:

> Second, "the term 'First Bank System,' which essentially comprises the mark, since the black background is nothing but a carrier therefor, is merely descriptive or misdescriptive of the fact that the collective involved herein is the first of its nature. See Section 2(e)(1) of the Act. As such, the said term is incapable of functioning as a mark within the meaning of Section 45 of the Act."

(Dk. 128, Peter Lancaster Aff., Ex. I at p. 59). The PTO examiner also suggested several amendments to the application.

13. In response to the PTO examiner's decision, the First Bank System amended its application as suggested and remarked on the two reasons given for denying the application. As for any similarity with the registered mark, First Bank System distinguished the two marks and disputed any likelihood of consumer confusion between them. On the other ground, First Bank System argued:

> Applicant's mark was adopted and is used to identify the banking and trust services rendered by applicant's affiliated banks and to identify these services and these affiliated banks with applicant. Applicant's mark consists of the words "First Bank System" in a solid field. The words "First Bank System" are written in a fanciful type style and are arranged so that the first letters, "F," "B," and "S," of the words "First," "Bank," and "System," and the last letters "T" and "K" of the words "First" and "Bank" are interconnected in a fanciful and unique manner, and the letters "S," "Y," and "M" of the word "System" are extended to the edge or periphery of the field. The whole effect or commercial impression of the mark "FIRST BANK SYSTEM" and design is one of distinctiveness and attractiveness, and the mark reflects the creative work of the commercial marketing organization which designed the mark. Furthermore, it is submitted that the words "First Bank System," *per se*, are novel, insofar as applicant is aware, when applied to banking and trust services. In view of the foregoing, it is submitted that the mark "FIRST BANK SYSTEM" and design is capable of and does, in fact, function as a service mark within the meaning of Section 45 of the Act of July 5, 1946, in that applicant's mark is capable of and, in fact, does distinguish applicant's services from the like services of other persons.

(Ex. P–483 at 105478). On June 14, 1971, First Bank System's mark was registered on the principal register as No. 915,249 with the following restriction: "No registration rights are claimed for either of the individual words 'Bank' or 'System' apart from the mark shown, but applicant waives none of its common law or other rights in such mark or in any feature thereof." (Ex. P–483 at 105474). In August of 1972, an amendment to the original registration increased the size of "First" and "Bank" and reduced the size and changed the type of "System."

14. In approximately 1979, First Bank System discontinued its use of the black television tube background for the words, "First Bank System." This background was the design that First Bank System had federally registered with its composite mark in 1971 as No. 915,429. After modernization, the mark, "First Bank System," appeared without the black television tube background but was accompanied by a new stylized octagon design. First Bank System did not renew its service mark registration No. 915,249 in 1991.

15. On December 26, 1989, First Bank System federally registered the block letter service mark, "FIRST BANK SYSTEM." This registration disclaims an "exclusive

right to use 'Bank' and 'System,' apart from the mark as shown." (Dk. 128, Peter Lancaster Aff., Ex. I at p. 65). This registration remains effective today.

**Other Facts**

16. In 1966, Seattle First National Bank applied for federal trademark registration of "Firstbank Card" for banking services, namely credit card financing services. Contemplating an opposition to this application, the First Bank Stock Corporation ("FBSC"), the predecessor to First Bank System, instead negotiated a settlement whereby FBSC agreed, in part, to not use the mark "First Bank" in states outside its eleven-state territory in connection with credit card financing services. This eleven-state territory did not include Kansas. Consequently, as between the Seattle First National Bank and First Bank System, this agreement gives the former the exclusive right to use the name "First Bank" in Kansas in connection with credit card financing services.

17. In November of 1986, the Secretary of State for the State of Kansas denied First Bank System's application to register a service mark, "First Bank." In a letter dated November 14, 1986, the Secretary of State's representative explained that a similar mark was already registered in 1985 by the University State Bank in Lawrence, Kansas.

■■■■ A trademark [4] serves "to designate, identify and point out distinctively the origin of the products or services with which it is associated." *Fotomat Corp. v. Cochran,* 437 F.Supp. 1231, 1241 (D.Kan.1977) (citation omitted). They protect consumers by giving a means to trace quality or inferior products or services to their source and by increasing the ease and efficiency with which product and service choices are made. 1 J. Thomas

McCarthy, *McCarthy on Trademarks and Unfair Competition* § 2.01[2][a], [b] (3rd ed. 1994) (hereinafter *McCarthy on Trademarks* ). They also protect businesses as to their investments in the trademark and in the quality of their goods or services identified by the trademark. *Id.* at § 2.01[2][a].

■■■■ To prove its trademark infringement claim under 15 U.S.C. § 1125,[5] the plaintiff must establish that it owns a valid and legally protectable mark and that the defendants' use of the same or similar mark in commerce has caused or is likely to create confusion as to affiliation, connection, association or origin. *See Investacorp, Inc. v. Arabian Inv. Banking Corp.,* 931 F.2d 1519, 1522 (11th Cir.), *cert. denied,* 502 U.S. 1005, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991). "Under common law, the trademark rules are part of the law of unfair competition and the right to a trademark grows out of use and not out of the adoption of a trademark." *Value House v. Phillips Mercantile Co.,* 523 F.2d 424, 430 (10th Cir.1975) (citation omitted). In short, "one must win the race to the marketplace to establish the exclusive right to a mark." *Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 503 (7th Cir.1992). As will be seen, federal registration of the trademark affects the rules of the race.

A hallmark of trademark cases is that they " 'often involve line drawing in areas that are inherently "fuzzy." ' " *Security Center, Ltd. v. First Nat. Sec. Centers,* 750 F.2d 1295, 1298 (5th Cir.1985). Though each side believes it is plainly entitled to summary judgment on its respective arguments, the court believes this case is another example of line drawing in a "fuzzy" area.

---

4. Under the Lanham Act, a trademark is "any word, name, symbol, or device or any combination thereof . . . used by a person . . . , to identify and distinguish his or her goods, . . . , from those manufactured or sold by others and to indicate the source of the goods. . . ." 15 U.S.C. § 1127. The term "trademark" also is often used to refer to words, symbols or names used to identify services. Under the Lanham Act, the words or symbols used to identify services are called "service marks." 15 U.S.C. § 1127. At least for purposes of this case, the same legal rules and requirements apply to both trademarks and ser-

vice marks. *See Fotomat Corp. v. Cochran,* 437 F.Supp. 1231, 1241 (D.Kan.1977). Case law typically uses the terms interchangeably. Though the marks at issue here are really service marks, the court will use trademarks for ease of consistent reference.

5. "Section 43(a) [of the Lanham Act, 15 U.S.C. § 1125] protects qualifying unregistered trademarks." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, ——, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992).

**Defendants' Motion for Summary Judgment**

The defendants argue there are no material issues of fact with respect to two independent grounds justifying summary judgment in their favor. First, the defendant First Bank System's 1971 federal registration predates the plaintiff's use of "FirstBank." Second, the defendant First Bank System used its marks, "First Bank System," and the mark, "First Bank," in Kansas prior to the plaintiff's 1983 adoption of "FirstBank." According to the defendants, the plaintiff cannot clear either hurdle in proving it acquired rights to a protectable trademark before First Bank System used or registered a similar mark. Though claiming superior rights to the mark "First Bank," the defendants represent that they do not seek exclusive use of it but instead to use the name of "First Bank Kansas" and to coexist with the plaintiff.

The plaintiff maintains the expired 1971 federal registration is of no effect here for several reasons. The defendant First Bank System purportedly abandoned its mark making the registration void. The plaintiff argues the registered mark must be narrowly construed based upon First Bank System's comments during the trademark application process, the 1967 contract with Seattle National Bank, the disclaimers in the registration, and the existence of similar registered marks. The plaintiff disputes that the defendants' earlier contacts had anything to do with community banking and rejects the evidence of defendants' advertising in Kansas as irrelevant.

*Effect of Federal Registration*

■ Trademark registration is at least prima facie evidence of the registrant's ownership and exclusive right to use the registered mark. 15 U.S.C. § 1115(b)(1); *see* *McCarthy on Trademarks* § 16.06[1]. The Lanham Act also mandates that federal registration of a mark "provides constructive

notice throughout the United States of the registrant's claim to ownership." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 202, 105 S.Ct. 658, 665, 83 L.Ed.2d 582 (1985); *see* 15 U.S.C. § 1072. This gives the registrant protection [6] nationwide without regard to where the registrant has actually used the mark. *Schafer Co. v. Innco Management Corp.*, 797 F.Supp. 477, 480 (E.D.N.C.1992), *aff'd*, 995 F.2d 1064 (4th Cir. 1993) (Table). In other words, the registrant enjoys the right of exclusive use even where it does not do business. *Fleming Companies, Inc. v. Thriftway, Inc.*, 809 F.Supp. 38, 41 (S.D.Ohio 1992). Another effect of the constructive notice provision is to eliminate "the defense of a subsequent user that he had adopted the mark in his area in good faith and with lack of knowledge." *Value House v. Phillips Mercantile Co.*, 523 F.2d at 429. Consequently, federal registration means that "no subsequent adoption and use of the same or similar mark for the similar goods can be justified on a claim of good faith." *Davidoff Extension S.A. v. Davidoff Comercio E Industria Ltda.*, 747 F.Supp. 122, 127 (D.Puerto Rico 1990) (quoting 4A Callmann, *Unfair Competition, Trademarks and Monopolies*, § 25.04 at 18 (4th ed. 1983)).

■ Initially, at least, the above legal principles demonstrate that the defendant's rights to "First Bank System" and to confusingly similar marks are superior to the plaintiff's rights arising from its 1983 adoption of "FirstBank." In a sister case recently tried in Iowa, United States District Court Judge Charles Wolle found that First Bank System's federal registration provided constructive notice to a plaintiff who had later changed its name to "First Bank." *First Bank v. First Bank System, Inc.*, No. 4–95–CV–80021 (S.D.Iowa Apr. 19, 1995). Still, the extent of First Bank System's rights as a registrant under the Lanham Act in the instant case depends on several other consider-

**6.** "[T]he protection is only potential in areas where the registrant in fact does not do business." *Armand's Subway, Inc. v. Doctor's Associates, Inc.*, 604 F.2d 849, 849–50 (4th Cir.1979). The registrant is not entitled to injunctive relief until the registrant extends its business to those states or identifiable trade areas where compet-

ing users exists. *Id.* On the other hand, the registrant still "has the security of knowing that no one else may, henceforth legitimately adopt his trademark and create rights in another area of the county superior to his own." *Application of Beatrice Foods Co.*, 429 F.2d 466, 472–73 (C.C.P.A.1970).

ations, some of which are unique to this case or were not expressly considered by Judge Wolle. These considerations revolve around these general concepts. First, a federal registrant's rights are inferior to those of a good-faith user who has used the mark first in a remote trade area. *GTE Corp. v. Williams*, 904 F.2d 536, 541 (10th Cir.), *cert. denied*, 498 U.S. 998, 111 S.Ct. 557, 112 L.Ed.2d 564 (1990); *Spartan Food Systems, Inc. v. HFS Corp.*, 813 F.2d 1279 (4th Cir. 1987). Second, the terms of the registration establish the scope of the mark's protection. *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1395 (3rd Cir.), *cert. denied*, 474 U.S. 920, 106 S.Ct. 249, 88 L.Ed.2d 257 (1985). Finally, other circumstances, including abandonment of the mark, may affect a registrant's rights. 15 U.S.C. § 1115(b).

*Plaintiff's Prior Use*

■■■ The plaintiff asserts its prior use of "First National Bank" makes it a prior user in its remote five-county trade area. The plaintiff focuses on those occasions when its advertising and brochures emphasized the "First" in its name. The plaintiff argues the continuing commercial impression created by this early emphasis of "First" gives it tacking rights to "FirstBank."

The advertisements, photographs, newspaper articles and bank documents submitted by the plaintiff, construed in the light most favorable to the plaintiff, evidence at most an effort to prominently display the "First" of its full name. Prior to 1983, the plaintiff's mark always included "National" in a central and conspicuous position following "First." The plaintiff typically printed "National" in the same size of letters as "Bank." None of the plaintiff's documents or advertisements create the commercial impression of linking "First" and "Bank" or of downplaying "National" to the importance of both "First" and "Bank."

Reserved generally for rare instances, tacking is "clearly contrary to well-established principles of trademark law" when it is proposed that "a mark with a narrow commercial impression" be tacked onto a mark "with a broader commercial impression."

*Van Dyne–Crotty, Inc. v. Wear–Guard Corp.*, 926 F.2d 1156, 1160 (Fed.Cir.1991). It is obvious, if not undisputed, that "First National Bank," even when "First" is prominently featured, has a narrower commercial impression than "FirstBank." The evidence of record does not suggest the two marks are legal equivalents. Nor is there evidence showing that prior to 1983 the plaintiff was regularly referred to as "First Bank." Indeed, when the plaintiff adopted "FirstBank," it publicly announced: "We have a new name, a new logo, a new look. You've known us for years as First National Bank. Now we're FirstBank, a name that tells you we're the number one bank in town."

The plaintiff's proposed tacking does not resemble either of the cases cited for support. In *First Michigan Bank Corp. v. First National Bank*, 887 F.2d 1095 (Fed.Cir. 1989), tacking was allowed onto a mark that was simply a modernized version of the same three-letter abbreviation. The change from "First National Bank" to "FirstBank" is not a mere modernization of identical terms. In *Forum Corp. of North America v. Forum, Ltd.*, 903 F.2d 434 (7th Cir.1990), the senior user had used "The Forum" for as long as it had been in business and had used the other versions, "The Forum Corporation of North America" and "The Forum Corporation," only for limited periods. The court simply saw no significance to these changes, for the term "forum" was the single salient and memorable feature of all three marks. The same cannot be said of "First" in the evolution of plaintiff's mark from "First National Bank" to "FirstBank." For all of these reasons, the court finds that the plaintiff's use of "First Bank" does not predate the First Bank System's federal registration in 1971.

The plaintiff devotes ten pages of its memorandum in opposition to arguments on the constructive notice given by the 1971 federal registration. Several of the arguments are simply untenable, and others depend on unreasonable factual inferences. Nevertheless, the court will address them individually.

*Constructive Notice*

■■■ The plaintiff narrowly construes the 1971 federal registration to provide construc-

tive notice of only the precise composite wording, "First Bank System" appearing on the black television tube background design. By disclaiming "Bank" and "System," First Bank System, according to the plaintiff, lost the right to say that "FirstBank" is a related mark.

As stated before, the constructive notice provision, 15 U.S.C. § 1072 prevents a junior user from claiming a good faith use of the same or similar mark and thereby gaining rights superior to the registrant. A federal registrant is secure in "knowing that no one else may, henceforth legitimately adopt his trademark and create rights in another area of the country superior to his own." *Application of Beatrice Foods Co.,* 429 F.2d 466, 472 (C.C.P.A.1970). "Such notice deprives subsequent users of the common law defense of 'good faith' adoption without notice." 3 *McCarthy on Trademarks* § 26.13[2].

 May the court rule as a matter of law on whether the plaintiff's "FirstBank" mark is confusingly similar to the defendant's registered trademark, "First Bank System"? Neither side argues that this question is inappropriate for summary judgment. Nor does either side come forth with evidence on this issue that requires credibility calls. The document evidence submitted is not the sort that raises competing inferences. Both sides appear to agree the issue is ripe for summary judgment but only disagree as to the decision to reach.

Beyond the parties' implicit agreement on a summary judgment disposition and the apparent absence of any material factual disputes, the court believes there are several circumstances unique to this case that also

permit it to decide this question now. First, the plaintiff's use of "FirstBank" simpliciter and the defendant's registered mark "First Bank System" [7] resemble each other so much that reasonable minds would not differ over their confusing similarity. Both use the same first two words which are pronounced and translated in exactly the same way. These first two words are also the salient features in both marks.[8] There are only minor differences in their visual presentations. Both marks are associated with banking services and are used in the same manner for marketing and identifying services. Both appear to create the same commercial impression. The confusing similarity created by using the same first two words is not counteracted by dropping "System," by deleting the solid field background, and/or by linking the two words into one.[9] Second, it is incongruent for the plaintiff to argue that "FirstBank" is not confusingly similar to "First Bank System" and to claim then that there is a likelihood of confusion between "FirstBank" and "First Bank Kansas." Having offered evidence to prove the latter in seeking summary judgment and having offered no evidence to rebut the former in opposing summary judgment, the plaintiff is not in a position to deny that its mark is confusingly similar to the registered trademark. Finally, Judge Wolle implicitly found in the recent sister case that the registered trademark, "First Bank System," provided constructive notice to a subsequent user of "First Bank."

The plaintiff suggests without explanation that First Bank System's disclaimer of statutory rights to "bank" and "system" in the 1971 registration narrows the constructive

---

**7.** After the trademark amendment in 1972, "First" and "Bank" in the defendant's trademark were larger than and printed in type different from "System." The black television tube background for "First Bank System" functions as little more than a field or carrier for the composite word mark.

**8.** To assess the likelihood of confusion in the marketplace, each mark is considered as a whole and greater weight is given the dominant portion of each mark. *Universal Money Centers v. AT & T,* 22 F.3d 1527, 1531 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994).

**9.** "[U]nder the likelihood of confusion test, defendant is an infringer where it reproduces the words, but not the background design logo, of the plaintiff's registered composite mark: 'An infringer is not absolved from liability merely because it has not replicated every single aspect of a trademark.... The scope of protection of the [registered mark] is not limited to an exact replication of the mark as it appears on the registration certificate.' " 3 *McCarthy on Trademarks* § 23.23 (quoting *Cullman Ventures, Inc. v. Columbian Art Works, Inc.,* 717 F.Supp. 96 (S.D.N.Y.1989)).

notice given by the registration. The rule of law runs counter to the plaintiff's apparent position. " '[D]isclaimed material still forms a part of the mark[s] and cannot be ignored in determining likelihood of confusion.' " *Universal Money Centers v. AT & T,* 22 F.3d 1527, 1531 (10th Cir.1994) (quoting *Giant Food, Inc. v. Nation's Foodservice, Inc.,* 710 F.2d 1565, 1570 (Fed.Cir.1983)). "The disclaimer does not have the effect of removing from the registered mark the matter disclaimed. It disclaims only a claim that the federal registration gives an exclusive right in those disclaimed words or symbols per se." 2 *McCarthy on Trademarks* § 19.20[1]. The court fails to appreciate how First Bank System's disclaimer of exclusive rights in "bank" and "system" materially changes the court's analysis and conclusion that the plaintiff's mark is confusingly similar to the 1971 registration.

*Estoppel Based upon Representations to the PTO*

■ Because of its representations to the PTO, First Bank System is estopped from arguing its registered trademark provides constructive notice that reaches similar marks like the plaintiff's "FirstBank." The plaintiff premises this argument on First Bank System's written representations to the PTO submitted after the application had been denied initially. The plaintiff focuses primarily on First Bank System's arguments to the PTO that its mark consisted of three words typed in a fanciful style, arranged for a specific effect and placed against a solid background.

The court finds no merit to these arguments. In its response to the PTO, First Bank System not only argued the unique lettering, arrangement and design, but it also maintained "that the words 'First Bank System,' *per se* are novel." Therefore, the court is unable to infer from the prosecution history that First Bank System conceded or admitted that its mark was registrable or protectable only because of the particular lettering, arrangement, and design. More importantly, because First Bank System as the applicant argued the composite word mark was novel in itself, a person searching the PTO's records and reading the applicant's

memoranda would have no reasonable basis to choose one alternative argument over another in deciding whether constructive notice was given.

■ The plaintiff also calls attention to the fact that First Bank System during the application process never mentioned "First Bank" as having trademark significance and never disclosed "First Bank Card" as a concurrent user of a confusingly similar mark. The conclusions that the plaintiff wants to draw from these circumstances are not reasonable inferences, but mere speculation. Whatever reasons First Bank System had for not arguing or mentioning these matters, the plaintiff has not shown them to be relevant in deciding if the plaintiff received constructive notice from the federal registration.

The plaintiff cites no legal authority for the proposition that a federal registrant should be estopped from arguing constructive notice against related marks based upon the registrant's representations to the PTO concerning the distinctive nature and commercial impression of its mark. The plaintiff does cite *Broadcasting Publications, Inc. v. Burnup & Sims, Inc.,* 582 F.Supp. 309, 314–15 (S.D.Fla.1983). Broadcasting Publications ("Broadcasting") had filed a trademark application on the word "Broadcasting" with a lightning symbol. Broadcasting later amended its application adding a disclaimer that clarified its intent to seek registration of a composite mark and not the registration of any of the individual components thereof. The district court followed the general rule that such representations are not grounds for estoppel: " 'Statements made during an *ex parte* prosecution before the United States Patent and Trademark Office seeking registration of a trademark do not circumscribe for all time the rights the registrant may acquire thereafter through extensive use.' " 582 F.Supp. at 315 (quoting *Polo Fashions, Inc. v. Extra Special Products., Inc.,* 451 F.Supp. 555, 561 (S.D.N.Y.1978)). (citations omitted). The district court, however, did not ignore the representations but considered them as evidence of the Broadcasting's usage of the symbol. This decision is relevant insofar as it sets out the general rule on

*ex parte* statements, but its holding is otherwise inapplicable.

The case from which the general rule is taken more closely resembles the situation here. In its trademark application, Polo Fashions admitted that its "use of a distinctive POLO logo together with words RALPH LAUREN would prevent confusion with a previously registered mark POLO used on woolen goods in the piece." *Polo Fashions,* 451 F.Supp. at 561. The defendant in that case sought to bind Polo Fashions to that admission. On the authority of the above rule, the district court rejected this argument and explained that "plaintiff's statement could hardly be viewed as an admission that the use of POLO with the Polo Player symbol on goods *similar* to plaintiff's products would not be likely to cause confusion." *Id.* A similar statement could be made in the case at hand. First Bank System's representations about the distinctive qualities of its mark or its omissions with respect to other registered marks can hardly be viewed as an admission that the use of "FirstBank" in connection with banking services would not be confusingly similar.

*The 1967 Settlement Agreement*

■ The plaintiff here asks why First Bank System in 1971 did not apply for federal registration of "First Bank." The plaintiff's answer is that the 1967 agreement with Seattle First National Bank prevented the defendants from making such an application. By agreeing to divide up the United States with Seattle First National Bank on the use of "First Bank" in connection with credit card financing services, First Bank System's predecessor, in the plaintiff's opinion, effectively lost the right to obtain a valid federal registration on "First Bank." The plaintiff extrapolates from this that the defendants now cannot get from constructive notice—protection for "First Bank"—what they could not obtain from federal registration.

The plaintiff cites no authority to support its efforts to weave this 1967 agreement into this litigation. Indeed, as far as the court can tell, this agreement was not even part of the PTO records that would have been available during a trademark search. The plaintiff's speculation over why First Bank System did not apply for the broader registration, "First Bank," ignores the obvious fact that First Bank System was not using that mark in 1971. Nor can the court draw any reliable conclusion that the First Bank System could not have obtained registration of "First Bank," assuming the mark satisfied all other requirements, because of the 1967 Agreement. The use of "First Bank" in connection with credit card financing services appears to be the only contemplated use addressed in that agreement. The plaintiff's speculation over Seattle First National Bank's intentions in 1967, the First Bank System's intentions in 1971, and the PTO's possible ruling on a hypothetical application is not a fair basis for limiting the constructive notice protection normally accorded a federally registered trademark. Moreover, the court believes it inappropriate in these circumstances that the plaintiff benefit from an agreement to which it was never a party.

*Prior and Concurrent Registrations and Uses in 1983*

■ The constructive notice provision, as the plaintiff correctly observes, has the effect of giving those adopting new marks the duty to search PTO records for confusingly similar registered marks. The plaintiff points out that a search of PTO records in 1983 would have disclosed numerous federal service mark registrations, in addition to First Bank System's, that involved the words "first" and "bank." The plaintiff reasons that if a third party's use of similar marks is relevant in determining a trademark's strength, then the registration of similar marks is relevant in narrowing the scope of "constructive notice" given by a particular registered mark. From this, the plaintiff argues that a reasonable person facing this situation would not receive constructive notice about the use of "First Bank" as to one specific registrant since those same words appeared in many registrations that were owned by different parties.

■ Third party registrations can be relevant in deciding the relative strength of different segments to a composite mark and the likelihood of confusion when marks share certain common segments:

Third party registrations are also probative to determine a common, weak significance of a part of a composite mark. Third party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak. Such registrations could also show that the PTO, by registering several marks with such a common segment, recognizes that portions of such composite marks other than the common segment are sufficient to distinguish the marks as a whole and to make confusion unlikely. That is, the presence of such a descriptive or suggestive weak segment in conflicting composite marks is not per se sufficient to make confusion likely.

1 *McCarthy on Trademarks* § 11.27[2][b]. The contemporaneous federal registrations of "California First Bank," and "First Bank of San Luis Obispo," "First Bank System" and "First Bank Card," in particular, shows that "First Bank" are common segments to these composite marks and that the PTO views the addition of other distinguishing segments sufficient to make confusion unlikely. These contemporaneous federal registrations, however, do not show that one can use "First Bank" without a distinguishing segment and not cause confusing similarity with one or more registered trademarks. If anything, a party confronted with these other registrations would understand that confusion was likely unless some distinguishing prefix or suffix was added to "First Bank." The court sees no significance to the fact that the plaintiff's mark appears confusingly similar to several registered trademarks, including First Bank System's. The plaintiff received constructive notice and failed in its duty to find a mark that was not confusingly similar. That a subsequent user can find a mark which is confusing with more than one registered mark hardly seems a sound reason for rejecting the owners' inherent legal rights in those registered trademarks.

### Abandoned Trademark

██ The plaintiff's last challenge to the 1971 registration is that First Bank System abandoned the registered trademark no later than 1981. Under the Lanham Act, a mark is deemed abandoned "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. The plaintiff offers testimony and documents showing that in 1979 First Bank System discontinued its use of the black television tube background for the words, "First Bank System," in favor of a more modern mark. This black background was the design that First Bank System had federally registered with its composite mark·in 1971 as No. 915,429. The new mark used the same words, "First Bank System," but appeared without the black television tube design and was accompanied by a new stylized octagon design. In the plaintiff's opinion, these changes establish that First Bank System abandoned its registered mark.

The plaintiff posits that the moment a registered mark is abandoned the federal registration becomes invalid, devoid of any legal entitlements and rights, and subject to cancellation. The plaintiff cites no authority that directly supports the notion that a federal registration stops providing constructive notice immediately upon a party's abandonment of the registered mark. The defendants dispute that abandonment has an instant terminal effect on federal registration and cite *Action Temporary Services, Inc. v. Labor Force, Inc.*, 870 F.2d 1563, 1566 (Fed. Cir.1989), for the following rule:

It is well established that pursuant to section 22 of the Lanham Act, a registration provides constructive notice for all use during the existence of the registration. However, a canceled registration does not provide constructive notice of anything.

... Here, in view of the existence of ... [registrant's] federal registration, ... [the other party's] use of its mark during the pendency of ... federal registration cannot be deemed "lawful use."

The defendants say the plaintiff could have sought cancellation of the 1971 registration on the grounds of abandonment but lost that right when the registration expired in 1991. The defendants conclude that the constructive notice effect of the 1971 registration continued until it expired and that the plain-

tiff has lost the chance to challenge the registration for abandonment. Because the plaintiff's evidence simply fails to show abandonment, the court need not resolve this dispute over whether a registration continues to provide constructive notice when the trademark has been abandoned, but not yet canceled.[10]

Abandonment does not necessarily result every time that an owner changes the form or appearance of its mark. Rather, an owner may change "the form of its mark to retain the benefit of its use of the earlier form, without abandonment, if the new and old forms create the same, continuing commercial impression." *Ilco Corp. v. Ideal Security Hardware Corp.*, 527 F.2d 1221, 1224 (C.C.P.A.1976). " '[M]inor changes in a mark which do not change the basic overall commercial impression created on buyers will not constitute any abandonment.' 1 McCarthy, *supra* § 17:10, at 787. So long as the owner continues use of the 'key element' of the registered mark, courts generally will not find abandonment." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 955 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993). In sum, a user or owner does not abandon its mark or lose priority rights by changing its mark "if done in such a way that the continuing common element of the mark retains its impact and symbolizes a continuing commer-

cial impression." 2 *McCarthy on Trademarks* § 17.10[1].

Dropping the background design and using a different typeset are minor modifications that do not alter the commercial impression of First Bank System's mark. The key element to the 1971 registered mark was the three words, "First Bank System." The updated mark retains these same salient three words. The different typeset does not change the commercial impression created by the original mark. *See Drexel Enterprises, Inc. v. Richardson*, 312 F.2d 525, 527 (10th Cir.1962) ("A mere change in form of a mark is not of itself an abandonment of the previous form or of a trademark." (citation omitted)). "Because small changes in trademark format are a minor element on which to base a drastic holding of abandonment, the courts hardly ever find abandonment where the key elements of the mark continues through new formats." 2 *McCarthy on Trademarks* § 17.10[2] at 17–43. The black television tube background was not a distinctive feature of the original mark. The elimination of this background design does not change the commercial impression created by the distinctive composite word mark. Among the list of changes that have not resulted in a change of commercial impression, a leading treatise includes "the dropping of a background design and continuing use of a word mark." 2 *McCarthy on Trademarks* § 17.10[2] at 17–44.[11] In short, the modern-

---

**10.** The Federal Circuit in *Action Temporary* does not address what effect that abandonment during the pendency of registration may have on constructive notice. Once abandoned, the mark returns to the public domain where it can be seized immediately with rights accruing that are superior to the original user's. *See Major League Baseball Properties, Inc. v. Sed Non Olet Denarius, Ltd.*, 817 F.Supp. 1103, 1132 (S.D.N.Y.1993), *vacated pursuant to settlement*, 859 F.Supp. 80 (S.D.N.Y.1994); *Koppers Co., Inc. v. Krupp–Koppers GmbH*, 517 F.Supp. 836, 854 (W.D.Pa.1981). If the constructive notice remained effective for a registered, but abandoned, trademark, then this general rule on abandonment would be subject to a broad exception. The court does not think such an exception exists. "Because trademark rights derive from the use of a mark in commerce and not from mere registration of the mark, the owner of a mark will lose his exclusive rights if he fails actually to use it." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 955 (7th Cir.1992) (citing 15 U.S.C. § 1127), *cert. denied*, —— U.S. ——, 113 S.Ct. 1879, 123

L.Ed.2d 497 (1993). In addition, the defendants' citations do not establish that a party's chance to challenge a registrant's priority rights ends when the registration expires.

**11.** The plaintiff cites *Owens–Illinois, Inc. v. Optimist International*, 173 U.S.P.Q. 120 (T.T.A.B. 1972), as an instance where the dropping of a design caused a change in commercial impression. In that case, the applicant, Optimist International, had previously used the OI letters always in association with either "Optimist" or "Optimist International" crowned by six sun rays within a triangle or octagon design. The board found it obvious that the commercial impression of that mark was the sum total of its parts. This finding was underscored by the fact that the Optimist creed considered each element of the mark to have specific significance or meaning. On these facts, the board said the applicant could not single out one element, the initials "OI," from the whole mark and tack that mark's use onto the Optimist's subsequent use of the initials alone. This case is plainly distinguishable. The

ization of First Bank System's mark did not change its distinctive character, that is, the composite word mark.

The testimony elicited by the plaintiff in support of abandonment is not clear and convincing evidence from which a reasonable mind could find abandonment. Fogelberg did not testify that First Bank System had abandoned the composite word mark. When asked to compare the registered trademark with the updated version used by the defendants, Hansen testified that her opinion as an advertising executive was that the newer mark was "graphically stronger." The probative value of this testimony is limited considering the test is the **overall** commercial impression created on the **average buyer**. As for Ross' testimony, it focuses on the commercial impressions created by the logos, designs or symbols and not the mark as a whole. Finally, the court rejects as irrelevant speculation the plaintiff's argument that First Bank System applied for a Kansas registration on "First Bank" because it knew that the 1971 registered trademark had been abandoned.

In conclusion, the court finds as a matter of law that the plaintiff's use of "First National Bank" before 1971 does not make it a prior user in a remote trade area or give it any tacking rights to "FirstBank," that the plaintiff's mark, "FirstBank," is confusingly similar to First Bank System's trademark registered in 1971, and that First Bank System did not abandon its registered mark before it expired in 1991. Throughout the period, 1971 to 1991, First Bank System had the exclusive right to use its registered trademark and was protected against subsequent users adopting a confusingly similar mark and acquiring rights superior to First Bank System's rights. Tacking on First Bank System's rights under the 1971 registration to its 1989 block letter registration of "First Bank System,"[12] the defendants'

rights to its trademark and similar marks take priority over the plaintiff's rights. The defendants are entitled to summary judgment on the plaintiff's trademark infringement claim for injunctive relief.

**Other Motions**

By reason of the above ruling, the court chooses not to address the defendants' alternative argument for summary judgment and further considers the plaintiff's motion for summary judgment (Dk. 142), the plaintiff's motion to strike (Dk. 146), and motions in limine filed by both sides to be moot. This leaves two pending motions that deserve more discussion.

The plaintiff moves for reconsideration of the district court's memorandum and order (Dk. 187) filed July 5, 1995. In that order, the district court overturned the magistrate judge's finding that the defendants had waived the attorney-client privilege by not timely turning over an adequate privilege log. The plaintiff insists the district court committed plain legal error in considering evidence and arguments that were not before the magistrate judge when he initially ruled. The plaintiff cites *Haines v. Liggett Group, Inc.*, 975 F.2d 81 (3rd Cir.1992), as holding that a district court errs when it sets aside a magistrate judge's ruling on a non-dispositive matter relying on evidence which was **never** before the magistrate judge. The district court will take this opportunity to clarify this confusion over its ruling.

The plaintiff does not accuse the district court of reviewing the magistrate judge's order based on evidence that was **never** before the magistrate judge. The plaintiff's point is a finer one. The district court should not have considered evidence and arguments first submitted in the defendants' motion to reconsider. The plaintiff loses sight of the fact that the defendants appealed not only the magistrate judge's ini-

---

different design features on the Optimist's first marks are clearly more significant, distinctive and salient than the black television tube background on First Bank System's registered mark. The black background served as a mere carrier for the prominent composite word mark.

12. In earlier rejecting the plaintiff's abandonment argument, the court concluded that the 1971 registered mark and First Bank System's updated mark have the same commercial impression. The court's reasoning and findings there necessarily sustain the conclusion that the 1989 registered mark continues the same commercial impression created by the 1971 registered mark.

tial ruling filed March 30, 1995, but also the magistrate judge's ruling on reconsideration filed June 12, 1995. Consequently, the district court did not exceed its statutory authority in considering evidence and arguments submitted initially and/or on reconsideration to the magistrate judge. The holding in *Haines* is without force here.

The plaintiff's argument is really with the district court considering the defendants' evidence and arguments that the magistrate judge on reconsideration had rejected in part because they were not included in the defendants' initial response to the plaintiff's motion to compel. The district court's order, at least by its own reading, suggests reasons for why such evidence and arguments should have been considered. The plaintiff is correct, nevertheless, that the district court's order does not expressly address the magistrate judge's strict reliance on the standards governing a motion to reconsider. For the record, here are the district court's reasons. The standards governing a motion to reconsider presume the parties are reasonably afforded a fair and full opportunity to develop and present their arguments and evidence in the original proceeding. By local rule, a party responding to a motion to compel is allowed ten days to file its response and accompanying exhibits. D.Kan.Rule 206(b). The defendants were given a single day. Oral argument took place three business days after the motion was filed. Of course, a magistrate judge acts well within his or her discretion in shortening response times and holding immediate hearings because of scheduling deadlines, the need for expedited handling, or other pressing reasons. At the same time, severely shortened briefing periods and advanced hearing dates undermine the presumption on which the standards for a motion to reconsider are based. The grounds for the presumption are even more questionable when the same parties are still being asked to meet their other immediate deadlines in the same case. Other than excusable oversight, the record shows no reason why the defendants would have withheld certain arguments and evidence from their initial response. In light of these unique circumstances, the court believes it unreasonable to summarily reject the defendants' ar-

guments and evidence simply because they were first advanced on reconsideration. The court does reconsider its earlier order but denies the plaintiff all relief requested in its motion.

The other pending motion deserving more discussion is the plaintiff's motion for relief pursuant to Rule 56(f). (Dk. 141). Such motions are committed to the district court's sound discretion. *Jensen v. Redevelopment Agency of Sandy City,* 998 F.2d 1550, 1554 (10th Cir.1993). The motions are liberally construed unless dilatory or lacking in merit. *Id.* The party seeking Rule 56(f) relief must submit an affidavit that "explains why facts precluding summary judgment cannot be presented," that identifies "the probable facts not available," that describes "what steps have been taken to obtain these facts", and that explains " 'how additional time will enable him to rebut movant's allegations of no genuine issue of fact.' " *Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1522 (10th Cir. 1992) (quoting *Meyer v. Dans un Jardin, S.A.,* 816 F.2d 533, 537 (10th Cir.1987)). A mere assertion " 'that the evidence supporting a [party's] allegation is in the hands of the [opposing party] is insufficient to justify a denial of a motion for summary judgment under Rule 56(f).' " *Jensen,* 998 F.2d at 1554 (quoting *Weir v. Anaconda Co.,* 773 F.2d 1073, 1083 (10th Cir.1985)).

The plaintiff argues that the court should deny the defendants' motion for summary judgment or alternatively require the defendants to produce immediately the documents to which they have had their privilege objection overruled by the magistrate judge. If the district court orders production, then the plaintiff wants additional time to submit supplemental factual findings. The defendants maintain the privileged documents offer no grounds for opposing their motion for summary judgment.

The court finds no merit to the plaintiff's motion. The plaintiff's counsel's affidavit falls short of the Tenth Circuit's standards for 56(f) affidavits. It does not identify "probable facts not available." *Campbell,* 962 F.2d at 1522. It relies on speculative

assertions that these privileged documents might contain information relevant in opposing the defendants' motion. Finally, the affidavit does not demonstrate that any facts, probable or not, found in those documents would rebut the defendants' allegation that there are no genuine issues of material fact to preclude summary judgment on their motion.

Now that the district court has set aside the magistrate judge's orders finding waiver, the plaintiff faces a serious challenge, at least for those documents that are plainly privileged, of proving its need for them outweighs the defendants' asserted privilege. The plaintiff's counsel's affidavit does not address this current situation. The plaintiff has not supplemented its motion in light of the district court's recent order. In short, the plaintiff has not shown the discoverability of these documents. For all of these reasons, the court denies the plaintiff's motion for Rule 56(f) relief.

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment (Dk. 127) is granted;

IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment (Dk. 141), the plaintiff's motion to strike (Dk. 146), and all pending motions in limine are denied as moot;

IT IS FURTHER ORDERED that the court reconsiders its order of July 5, 1995, in light of the plaintiff's motion to reconsider (Dk. 196) and denies the plaintiff all relief requested therein;

IT IS FURTHER ORDERED that the plaintiff's motion for relief pursuant to Rule 56(f) (Dk. 141) is denied.